Judge Fletcher, your honors, may it please the court, my name is Quintin Rhodes. I'm here on behalf of the appellant Van der hule. This case requires analysis of statutory provisions of both the U.S. Code as well as the Montana Code. It also requires an analysis of the Second Amendment if the court gets there. And it also requires that we read a particular case, which seems to have given us a somewhat, in my view, idiosyncratic construction of the statute, but we're bound by what the Supreme Court tells us the statute means. Agreed, your honor. And, of course, in reference to the Karen case, and briefly to review the statutory scheme, 922G of Title 18 forbids a person convicted of a felony from possessing a firearm. Title 18, 921A20 creates an exception for that. And that exception is if the person is restored to his constitutional rights by the jurisdiction that convicted him. And then there's another exception, unless. Unless means that if that restoration of rights includes any express provision prohibiting the felon from receiving, transporting, shipping, or possessing a firearm, then the exception of 820 doesn't apply. 922G forbids the possession of the firearm. Now, in this particular case, the restoration statute is a Montana statute that does not have an express exception for firearms, in that under Montana law, when your sentence is complete, once your judgment of conviction is fully discharged, you're restored to your civil rights. And there's no – in the statute that restores those civil rights, there's no exception for firearms. In the Karen case, there was not a specific statute that restored rights. Instead, the district court has 2,800 words, in fact, the breadth of Massachusetts law, which was at issue in the Karen case, and said that under the breadth of Massachusetts law that there are enough rights restored to felons that the substantial civil rights of a felon are restored upon, in that case, five years after the discharge of the sentence. And then because the court looked to the breadth of Massachusetts law to see if those rights were restored, it also went and looked to the breadth of Massachusetts law to see if there were any limitations on the right of the felon to have a firearm. And it found that there were. In fact, a felon could not have a firearm. Let's cut to the chase. I'm not so much interested in hearing the history of Massachusetts because we can read the case, but I would like to understand, express or otherwise as a matter of Montana law, the status of Mr. Vander Heel as opposed to other Montana citizens' rights with respect to weapons. Now, the Montana Supreme Court concluded that he was, apparently if I'm right, categorically prohibited from obtaining a concealed weapons permit. Is that correct? Judge Fischer, that's correct. Okay. So hold on. Let me. Sure. Now, is it correct or not that Montana is an open carry jurisdiction? Your Honor, Montana is an open carry jurisdiction. Okay. And what does that mean? Does that mean that Mr. Vander Heel can walk about anywhere in Montana, as any other citizen can, with a gun so long as it's not concealed? Yes, Your Honor. As a matter of fact, he can even conceal it so long as he's not within the city limits. Just like any other. Okay. But under Karen, at least it appears to be an all-or-nothing regime. So I'm trying to find out, just as a practical matter and legal matter, whether Mr. Vander Heel has all the rights of every other Montana gun-carrying citizen with any meaningful restriction. Except for the fact that he's not eligible for a concealed weapons permit. The answer is yes. Okay. And what does it mean? Not everybody, I assume, asks for a CCW. But as I understand Montana law, except for his category of people, it's a mandatory issuance of a CCW. Is that correct? That's correct, Your Honor. As long as the person qualifies for it and there are very limited qualifications, then the jurisdiction is a shall-issue jurisdiction and the sheriff can't deny one unless it fits within one of the categories. And the question here is, does Montana's prohibition on Mr. Vander Heel from obtaining a concealed weapons permit limit his ability to ship, transport, receive, or possess a weapon? Right. Within the meaning of Karen. Within the meaning of Karen. And what you're saying, I think, is an accurate description. But there's another way of saying it. Because he cannot get a concealed weapons permit, that means he cannot carry a concealed weapon within the areas where a permit would be necessary. Well, I would put it, Your Honor, that he cannot conceal a weapon. He can carry a weapon, just can't use it. I said cannot carry a concealed weapon within the area where a permit would be necessary. That's correct, Judge Fletcher. With the caveat that I would state it a different way, that's correct. Now, the Massachusetts case that the Supreme Court decided, there was an ability of this felon to have unrestricted access to rifles and unrestricted access to handguns within his home or business. Correct. The only thing he couldn't do was have a handgun outside of the home or business. So, in fact, he could possess weapons a lot in Massachusetts, but there was a certain amount of restriction on carrying handguns. Agreed. Well, we have here a certain amount of restriction on carrying weapons. For this man in Montana, he can't carry a concealed weapon. There is a restriction on the way he can carry weapons. In our argument, judges, it's ambiguous with respect to whether that means possession or whether concealment is entailed in possession or whether it's not. Now, if the Court finds that it's ambiguous, if the Court, for example, agrees that the Sixth Circuit's decision in Flores is a rational way of looking at it, then there's a disagreement with the government who would look at it as a complete restriction per Karen. If there's an ambiguity between, in the way you look at concealment, whether it's possession or whether it's not possession, then we would urge the Court to follow the rule of lenity and say that we're going to construe that ambiguity in favor of Mr. Vanderheide. You know, I might have been inclined to do that if I were reading the statute simply as a statutory matter. But now, as instructed by Karen, I've got problems. Another way of saying it is his manner of possession of a weapon is limited under Montana law. It is. And the Court and Karen discussed that because the state has decided that there's some sort of heightened level of caution about this person because of his felony conviction, then he falls within the statutory prohibition of 922G. And that was the Court's analysis in the majority. And I agree with that. And we think there's ambiguity there. We think that the rule of lenity should apply. But if the Court ---- But Karen itself didn't give fairly short shrift to using the rule of lenity there. It's not a question of excusing him from criminal conduct. The rule of lenity in this circumstance would be to expand his rights. Isn't that correct? Well, the way I would look at it, Judge, is that in Karen there was no alternative interpretation that made any sense. In order for the rule of lenity to apply, there has to be two competing interpretations that both make sense. And in the Karen case, the Court ruled that the competing interpretation ---- because we weren't talking about concealment, we were talking about possession of handguns outside the home, that there was no alternative way to interpret the restriction in Massachusetts law. And so lenity could not apply. Here what we're arguing is that possession is different than concealment, and that because it is, there's two alternatives for the Court to consider. One is a blanket proscription for all times and all places, per Karen. The other is, well, concealment is different than possession. And because it's different than possession, we can construe the statute in a way that makes sense that would favor Mr. Vander Hill's position. How do you get around for transport? That would ---- well, in our view, Judge, concealment is not shipment, it's not transport, it's not receipt, and it's not possession. Now, if the ---- Carry is a verb that strikes me as implying transport. So if he wanted to carry his weapon outside his house concealed, he would not be able to do so. If he was in the city limits, that's correct. Well, I'm a little metaphysical to say that it doesn't, you know, concealment doesn't mean transport. If the Court ultimately differs with our view on that particular point, Your Honor, then it needs to grapple, I think, with the Second Amendment question. And the Second Amendment applies because of the Montana statute. And I want to read it. It's Montana Code, annotated 4618802, subparagraph 2, and it reads, quote, if a person has been deprived of civil or constitutional rights by reason of conviction of an offense and the person's sentence has expired, the person is restored to all civil rights and full citizenship, the same as if the conviction had never occurred, unquote. Now, in our view, that restores the Second Amendment right. Agreed, it doesn't restore the right to have a concealed weapons permit, but every court that has considered the question has ruled that concealed weapons are not a Second Amendment right. So what is restored are the Second Amendment rights, and those include what Heller said was the core Second Amendment right, and that is the right to self-defense with a handgun in one's own home. But that's a tricky proposition. You're arguing based on Montana law, but the real question is whether or not this federal statute violates the Second Amendment. Isn't that right? You're challenging the operation of this federal statute if we read it as, I'm afraid I have to read Karen reads it. You're saying that if that's the meaning of the federal statute, it violates the Second Amendment. That's right, Your Honor. And the courts who have considered it, all of the circuit courts who have looked at the Heller analysis have said there's a two-step process. First, does the Second Amendment apply in this context? And the Seventh Circuit in the Williams case said that it does, even for felons whose rights haven't been restored. In this case, the Montana felony conviction took away the Second Amendment right, and Montana Code Annotated 4618.802 reinstated the Second Amendment right. So the Second Amendment right applies to Mr. VanderHeel. He has the Second Amendment right, and he has the core right. To the extent that the federal statute allows him to do so, so then the question is, is the federal statute constitutional in the limitation it places upon his ability to possess or carry or transport a weapon? Precisely, Your Honor. And our view of that is that because his rights have been restored under the Second Amendment, then this 922G has to pass Second Amendment muster. Right. Fair enough. And I'm afraid I don't see a constitutional problem with the federal government restricting the rights of felons to carry weapons. Now, they've made certain exceptions so that in certain circumstances, felons who've had their civil rights restored can do so, but I just don't understand that there's a Second Amendment violation when the federal government has said, you know, we think felons as a general category are sufficiently dangerous, they can't possess weapons, and we'll make a few exceptions here and there. You're saying the exception has to be broader, but I just don't see the Second Amendment argument. Judge, in order for him to be restored to his Second Amendment rights, the jurisdiction has to restore them. The jurisdiction has. And so consequently, he has a right under the Second Amendment. Now, our view of it is because there's no restriction on that right in the restoration, the Second Amendment right invokes Heller, and Heller says that he can have a handgun in his home to defend himself. Now, the government's position is you can't. You're not allowed to possess any handgun or any other gun in any context forever. And under strict scrutiny, Heller trumps that interpretation. Now, the government has conceded strict scrutiny in our view because they haven't argued, and it's their burden to show strict scrutiny can be satisfied. They haven't even argued that it can be satisfied. What they've argued is intermediate scrutiny, which is what the Seventh Circuit adopted in the Williams case. Even though you have a felon, his rights haven't been restored under any theory, and they still implemented an intermediate scrutiny test. Now, if you implement an intermediate scrutiny test here, we would ask the Court to be cautious about watering it down because it's an important test. It's not just another rational basis approach. It protects people in the sex discrimination context. It protects people who are subject to time, place, and manner restrictions under the First Amendment. It's meant to be something of higher review, of stricter analysis, a higher level of review than simply rational basis. And we can understand a rational basis test for saying that these felons, even though they've had all their constitutional rights restored, that these felons shouldn't have guns. We can understand that on a rational basis test. But if you raise the level of scrutiny and you say that we are going to forbid felons from having guns just because in Montana they can't get a concealed weapons permit, then the intermediate scrutiny test doesn't mean much. There is such a narrow criteria here, such a light criteria for forbidding Mr. Vander Hill from ever having a gun, and that is simply you can't get a concealed weapons permit in Montana, even though you can carry concealed in Montana anywhere but the city limits, that if you review that under any kind of heightened scrutiny, it can't pass the constitutional muster because in Heller, the right that you have impaired here is what Heller and McDonald have ruled to be a fundamental right, and that is to defend yourself in your home with a handgun. So in order to prevent Mr. Vander Hill from doing that, the government says just because he can't have this concealed weapons permit, this de minimis criteria as we would view it, just because he can't meet this one de minimis criteria, then his fundamental right is taken away.  Is that true in Caron, then? Would Caron be under that analysis also have to be, because that would have prohibited him from possessing within his own? Yes, Your Honor. If Caron were reviewed under that same intermediate scrutiny, the sole reason why the defendant in Caron was forbidden from having any kind of firearm and for any reason for life, including why he is forbidden from being able to defend himself in his own home with a handgun, is because he can't take a handgun outside of his place of business or his home. Now, that's a rational basis scrutiny that makes sense. But if you raise that level of scrutiny, if you make sure that intermediate scrutiny means what the courts have always said that it means, and that means a higher level of scrutiny, in other words, does the government really have an important interest in forbidding firearms, does the government really have an important interest in stripping him of this fundamental right just because he can't get a concealed weapons permit? Just because he's committed. And then I'll shut up. But I just want to understand your answer or your argument. Are you suggesting that the Second Amendment mandates on restoration of civil rights by a state that if they restore civil rights, then they're flipping Caron around, that it's an all-or-nothing proposition, that as a matter of constitutional Second Amendment law, a felon whose civil rights have been restored, at a minimum, must always have the ability to have a handgun in his home? That's the fundamental right at risk, Your Honor, and under an intermediate scrutiny test. So there's no basis under intermediate scrutiny where a felon can be a felon whose rights have been restored cannot be prohibited from having a handgun in his home. They could be prohibited from taking it outside the home? Under the intermediate scrutiny test, if the Court adopted a view like the Seventh Circuit in Ezel, which said that the farther you get from the home, the lighter the burden on your fundamental right, it's kind of an inverse proportion. The farther you get from home, the less scrutiny is required or the less strict scrutiny, put it that way, is required. It may be. But in this particular case, the only reason that the government gives for restricting his right to defend himself with a handgun in his home is that he can't get a concealed weapons permit. Now the government can't have an important interest in stripping him of that fundamental right on such a de minimis criteria. We've got it. Your time's up. Let's hear from the government, and we'll give you a chance to respond. Thank you, Judge Fletcher. May it please the Court, Adam Jett for the United States. Your Honors, I'd like to begin with a colloquy between my friend and actually both Judge Fischer and Judge Fletcher. The United States agrees that this case is entirely determined by the Supreme Court's decision in Caron. The Supreme Court in Caron was faced with a statute where there were two grammatically plausible readings of the statute. And the rule that they adopted, quoting from the case, is that if there's a, quote, state weapons limitation, or another piece of language they used was a, quote, restricting firearm rights in part, that that is sufficient to trigger the unless clause. In other words, here, because Mr. Vander Heul was convicted of sexual intercourse without consent and sexual assault, he counts as a felon for the purposes of the Felon in Possession statute. And because the State of Montana has continued to give effect to that conviction by restricting his firearms rights in part, he can't. Only to the narrow window of concealment. It does not restrict him from having any weapons, handgun, rifles, whatever else. And he can go outside his home. He can go outside his business. He can go everywhere that every other citizen in Montana can, except those, for whatever reason somebody would need to conceal it, he can't do that. Well, Your Honor, concealing a firearm is still a limitation on how someone possesses that firearm or transports that firearm. So in Caron, of course, the limitation was you had to keep the handgun in your Here, the limitation is you have to keep it, you know, visible on your side. You can't tuck it under your coat. I think as Judge Fletcher got to, there are different rhetorical formulations that you could use. So if you wanted to try to describe it as a limitation based on location, you can say, well, it's, you know, on your belt, not under your coat. If you want to describe it as a limitation based on the type of gun, you could refer to it as a concealed weapon. But regardless, Your Honor, there's nothing in either the text of the statute or the type of gun, method of carrying. The language that Caron used was just a limitation. And actually, this Court in the Meza-Corrales case, which is cited in the district court opinion, but I apologize, it's not in our brief, so let me give you the site. It's 183 F. 3rd at 1130, elucidates the Caron decision as turning on whether there's, quote, even the most limited restriction. In other words, Your Honor, there's no workable rule by which a court can sit down and say, well, let's say you have one to ten, how severe is this restriction? You know, only being able to have a handgun outside of your house seems like a three. Only being able to carry a concealed weapon seems like a two. There's just no workable way to do that. Either you're in or you're out. And the rule that the Supreme Court adopted in Caron is any limited restriction is sufficient. So it seems that what my friend tries to do then is he says, well, this isn't actually a restriction on possession or a restriction on transport. It's something distinct. It's something called concealment. But I think as Judge Fletcher got to in his question, concealment is not a distinct activity. And it's certainly not as Montana law here applies it. In other words, if Mr. Vander Hill were just walking down the street and saw a gun and threw a blanket over it and had nothing else to do with the gun, I mean, I don't know the exact details of Montana law, but I would speculate that he hasn't then possessed a concealed firearm, even though in some literal sense he has concealed the firearm. The question under Montana law is whether he's possessing a concealed firearm. In fact, actually the language that Montana law uses is carry or bear. So in other words, what Montana has done is it's taken the activity carry or bear, which I think quite logically is a synonym for possessing or for transporting, the language that the federal statute uses. And Montana has placed a restriction on that. You can carry or bear in some ways and in some places, and you cannot in others. And just to challenge one of my friend's premises here, I think it's incorrect to say that a limitation on a concealed firearm is just a really teeny, tiny limitation. I mean, I think under the rule established by Karen that's irrelevant, even a teeny, tiny limitation is enough. But I think it's incorrect to describe it that way. It's, at least in many places, fairly difficult to carry a firearm if you're, you know, sort of have it visible on your waist. I mean, maybe things are different in Montana, but I rarely see somebody carrying a six-shooter on their side. I think as a practical matter, the way that people would ordinarily carry a firearm outside of their home would be to have it in a bag or under their coat. And so at the very least, this is a limitation. It's much more burdensome to not be able to do so. And this isn't just an arbitrary limitation that Montana selected. I mean, this is a line that most state firearms laws have wrestled with, whether and when to allow someone to carry a concealed weapon. Montana has taken a specific position on that line, which is generally they will allow people to carry a concealed weapon, but they initially judged all felons and recently actually narrowed the category to a specific set of felons who committed specific violent crimes, including Mr. Vander Hill. I'm looking at Karen, and the opinion sums up. It says, in sum, Massachusetts, and there they were only dealing with possession, but in any event, Massachusetts treats Petitioner as too dangerous to trust with handguns, although it accords this right to law-abiding citizens. Okay, so Montana has not suggested that Petitioner is too dangerous to trust with Karen. Here Montana has simply said, you can't, however, get a concealed weapon. So are you suggesting that that is a sufficient limitation to say that Montana treats Petitioner as too dangerous to trust with handguns? Oh, Your Honor, I just want to make sure that I'm understanding your question completely. It sounds like maybe you're asking two different questions. One is whether you're I usually do. It's called the compound question. You're not allowed to do that as a lawyer, but judges do it all the time. Thank you, Your Honor. It sounds like you're asking first whether there needs to be a specific judgment about dangerousness. No. I'm asking you, when Karen sums up its rationale as the Supreme Court, having made this all-or-nothing dichotomy, it sums up in its own words, Massachusetts treats Petitioner as too dangerous to trust with handguns. In Karen, they were treated in such a fashion as that they were not allowed to take them outside their home or business, correct? That's correct, Your Honor, yes. Significant restriction, significant distinction between prior felon and ordinary law-abiding citizens. In this case, Montana has not prohibited him from possessing or transporting weapons, handgun, rifles, whatever. So he's not considered so dangerous that he is not to be trusted with guns. The only judgment they've made is that he is not entitled to carry them in a concealed manner. So when it comes down to that refinement, that is enough to invoke both the all-or-nothing principle of Karen and the rationale of Karen. Yes, Your Honor. Because to be clear, in the Karen case, although Mr. Karen could possess firearm – excuse me, Mr. Karen could possess handguns in his home or place of business. So it's not that the State of Massachusetts hadn't decided that he could never have a handgun. They placed a limitation. They said he can have a handgun in some places and not in other places. They just said that. Yes, Your Honor. I'm asking you, having found it on those facts and stated their rationale. Okay. They didn't have this case in front of them. They had the Massachusetts case. So what you're saying is, given the language articulated in the context where he was not allowed to take them in public generally to wear away law-abiding citizens, in this case he can. He can carry it on his hip. He can have – walk around the streets. He can walk into Starbucks or whatever else, if that's the open carry scope in Montana. Sit at a bar with a drink in his hand. He just can't put it under his coat. And you're saying that that comes within the judgment that Montana treats Petitioner as too dangerous to trust with handguns. Yes, Your Honor. I guess I have two responses to that. The first is, of course, I think that in some language in the last sentence of the Caron decision obviously needs to be read in light of the rest of the decision. So while Caron said that Massachusetts treats Petitioner as too dangerous to trust with handguns, in fact, they did trust the Petitioner in Caron with handguns in certain places. No, they didn't. They trusted him to have it in very confined circumstances. Yes, but they still trusted him with handguns in certain circumstances. I don't mean to disagree with you, Your Honor. I just mean to point out that I think this was just kind of summary language, summing up what was going on in the case. I understand, counsel. I can read it. I also write opinions. And when I write an opinion based on the facts in the case in front of me, I will articulate the rule for those facts. The Supreme Court presumably writes it the same way. When it sums something up and states its rationale, they usually do it, or I do it, so you get an idea of what's motivating the decision. Yes, Your Honor. I guess the rationale that we understand from the Caron case is that when there's a limitation placed on the felon, that's sufficient. And I think that if what you're looking for in this case is a limitation which express some judgment about dangerousness, again, that's not obvious to me from the face of the opinion, but, Your Honor, if you think that's what follows from the concluding sentence, I don't think it takes a lot of imagination to realize that choosing not to allow violent felons to carry concealed weapons is some judgment about their dangerousness. Even though it's not a judgment that the gun has to stay at home, it's still a judgment that people need to see that they're armed and see that they're coming. So, conceivably, Your Honor, the facts of this case are obviously not identical to the facts of the Caron case, but I think both the rules the Supreme Court elucidated and this Court summed up in these corrales that it's about the same. Buried in that rhetoric is the answer to my question. Thank you. What are the criteria under which Montana decides whether or not to grant a concealed weapon permit? Your Honor, my understanding is that it is essentially a shell issue requirement. I believe that the person needs to be over the age of 18. They need to have resided in Montana for six months. I can check if there are any others. Well, it's the disabilities I'm interested in. In what circumstances will they deny? Oh, I see, Your Honor. At the time that Mr. Caron's firearms rights were restored, it would be denied if the person had been convicted of a felony generally. At this point in time, it has now been restricted to a particular subset of violent felonies, which includes forced sexual intercourse and sexual assault, the two felonies that Mr. Caron had. So he continues to suffer under the statute, which suggests then that Montana law categorizes a certain group of felons as posing certain dangers, and I think it then follows that they view carrying a concealed weapon as a particular danger and that these particular people are particularly dangerous. I'm sure. Yes, Your Honor. I think that's exactly correct. And just to help you with your answer to Judge Fisher's question. I appreciate that, Your Honor. I appreciate that, Your Honor. Counsel, is your reading the same as Appellant's counsel that the sheriff shall issue the, and that if it comes within the except provision, then the sheriff shall not issue it? Yes, Your Honor. And that's not just our reading. The district court certified that question to the Montana Supreme Court. That's why there were two different district court decisions. And the Montana Supreme Court explicitly held, yes, the sheriff shall not. So there are no circumstances under which the sheriff can issue the firearms permit here to Mr. Vanderpool. Unless the panel has any other questions or is interested in discussing the Second Amendment issue. Okay. Thank you. Thank you very much. Would you like two minutes to respond? Yes. Thank you, Judge Fletcher. I would like to sum up by saying that the interpretation that the government has for the interplay between the federal and the state statute here strips Mr. Vanderheul from the right and what is called the core Second Amendment right in the Heller decision of defending or using self-defense with a handgun in his home. That calls out for some higher level of scrutiny than rational basis. And we think that strict scrutiny is applied because of the reinstatement of the Second Amendment right by the Montana law. But even if the court uses intermediate scrutiny, we would urge the court not to water that test down. You just said that. He didn't argue with you. Well, and ‑‑ You're just repeating what you said before. Fair enough, Judge. Once again, it's a heightened level of scrutiny that we don't think the statute can meet. And thank you for your time. Thank both of you for your argument. Vanderheul v. Holder is now submitted for decision.
judges: Fletcher, Fisher, Bybee